

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
OFFICE OF THE CLERK**

Alfred A. Arraj
United States Courthouse
901 19th Street
Denver, Colorado 80294
www.cod.uscourts.gov

Jeffrey P. Colwell
*Clerk*

Phone: (303) 844-3433

Date: 11/25/2024

☐Pro Se    ☒Retained    ☐CJA    ☐FPD    ☐USA or other
Federal Agency
(Appeal Fee Exempt)

Case No: <u>24-cv-03155-SKC-MDB</u>    ☐Amended Notice of Appeal
☐Other pending appeals
Date Filed: <u>11/25/2024</u>    ☐Transferred Successive
§2254 or §2255
Appellant: <u>Katelyn Van Kirk, Kiersten Van Kirk, Brooke
Slusser, Kaylie Ray</u>    ☐Supplemental Record

Pro Se Appellant:
☐IFP forms mailed/given    ☐Motion IFP pending    ☐Appeal fee paid
☐IFP denied    ☐Appeal fee not paid

Retained Counsel:
☒Appeal fee paid    ☐Appeal fee not paid    ☐Motion IFP filed

The Preliminary Record on Appeal is hereby transmitted to the Tenth Circuit Court of Appeals. Please refer to the forms, procedures, and requirements for ordering transcripts, preparing docketing statements and briefs, and designations of the record that are found on the Tenth Circuit's website, www.ca10.uscourts.gov.

If not already completed, either an appeal fee payment for filing this case or filing of a motion to proceed *in forma pauperis* will be made to this District Court.

The transcript order form must be filed in the District Court as well as the Court of Appeals within 14 days after the notice of appeal was filed with the District Court.

If you have questions, please contact this office.

Sincerely,

JEFFREY P. COLWELL, CLERK

by:  s/<u>T. Lovell</u>
Deputy Clerk

Rev. 8/17/2017

cc:    Clerk of the Court, Tenth Circuit Court of Appeals

Rev. 8/17/2017

APPEAL,JD4,NDISPO

# U.S. District Court – District of Colorado
## District of Colorado (Denver)
## CIVIL DOCKET FOR CASE #: <u>1:24–cv–03155–SKC–MDB</u>

Slusser et al v. Mountain West Conference, The et al

Assigned to: Judge S. Kato Crews

Referred to: Magistrate Judge Maritza Dominguez Braswell

Cause: 20:1681 Title IX Educational Amendments 1992

Date Filed: 11/13/2024

Jury Demand: Plaintiff

Nature of Suit: 440 Civil Rights: Other

Jurisdiction: Federal Question

**<u>Intervenor Plaintiff</u>**

| | | |
|---|---|---|
| **Utah State University** | represented by | **Andrew Martin Nussbaum**<br>First & Fourteenth PLLC<br>2 North Cascade Avenue<br>Suite 1430<br>Colorado Springs, CO 80903<br>719–428–4937<br>Email: <u>andrew@first–fourteenth.com</u><br>*ATTORNEY TO BE NOTICED* |

**<u>Plaintiff</u>**

| | | |
|---|---|---|
| **Brooke Slusser** | represented by | **Justin Ross Olson**<br>Kroger Gardis & Regas, LLP<br>111 Monument Circle<br>Suite 900<br>Indianapolis, IN 46204<br>317–777–7450<br>Email: <u>jolson@kgrlaw.com</u><br>*ATTORNEY TO BE NOTICED* |
| | | **William Bock , III**<br>Kroger Gardis & Regas, LLP<br>111 Monument Circle<br>Suite 900<br>Indianapolis, IN 46204<br>317–698–7332<br>Fax: 317–264–6832<br>Email: <u>wbock@kgrlaw.com</u><br>*ATTORNEY TO BE NOTICED* |

**<u>Plaintiff</u>**

| | | |
|---|---|---|
| **Alyssa Sugai** | represented by | **Justin Ross Olson**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **William Bock , III**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**<u>Plaintiff</u>**

1

**Elle Patterson**                                    represented by   **Justin Ross Olson**
                                                                       (See above for address)
                                                                       *ATTORNEY TO BE NOTICED*

                                                                       **William Bock , III**
                                                                       (See above for address)
                                                                       *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Melissa Batie–Smoose**                              represented by   **Justin Ross Olson**
                                                                       (See above for address)
                                                                       *ATTORNEY TO BE NOTICED*

                                                                       **William Bock , III**
                                                                       (See above for address)
                                                                       *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Aleah Liilii**                                      represented by   **Justin Ross Olson**
                                                                       (See above for address)
                                                                       *ATTORNEY TO BE NOTICED*

                                                                       **William Bock , III**
                                                                       (See above for address)
                                                                       *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Nicanora Clarke**                                   represented by   **Justin Ross Olson**
                                                                       (See above for address)
                                                                       *ATTORNEY TO BE NOTICED*

                                                                       **William Bock , III**
                                                                       (See above for address)
                                                                       *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Kaylie Ray**                                        represented by   **Justin Ross Olson**
                                                                       (See above for address)
                                                                       *ATTORNEY TO BE NOTICED*

                                                                       **William Bock , III**
                                                                       (See above for address)
                                                                       *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Macey Boggs**                                       represented by   **Justin Ross Olson**
                                                                       (See above for address)
                                                                       *ATTORNEY TO BE NOTICED*

                                                                       **William Bock , III**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Sierra Grizzle**                                represented by   **Justin Ross Olson**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **William Bock , III**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jordan Sandy**                                 represented by   **Justin Ross Olson**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **William Bock , III**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Katelyn Van Kirk**                             represented by   **Justin Ross Olson**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **William Bock , III**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Kiersten Van Kirk**                            represented by   **Justin Ross Olson**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **William Bock , III**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Mountain West Conference, The**               represented by   **Chad David Williams**
                                                                  Davis Graham & Stubbs LLP
                                                                  1550 17th Street
                                                                  Suite 500
                                                                  Denver, CO 80202
                                                                  303–892–9400
                                                                  Fax: 303–893–1379

3

Email: chad.williams@davisgraham.com
*ATTORNEY TO BE NOTICED*

**Kyler Karl Burgi**
Davis Graham & Stubbs LLP
1550 17th Street
Suite 500
Denver, CO 80202
303–892–9400
Fax: 303–893–1379
Email: kyler.burgi@davisgraham.com
*ATTORNEY TO BE NOTICED*

**Wesley R. Powell**
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
212–728–8264
Email: wpowell@willkie.com
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **Gloria Nevarez**<br>*In her Official Capacity as the Commissioner of The Mountain West Conference* | represented by | **Chad David Williams**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Kyler Karl Burgi**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Wesley R. Powell**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Board of Trustees of the California State University** | represented by | **Bryan Heckenlively**<br>Munger Tolles & Olsen LLP<br>560 Mission Street<br>27th Floor<br>San Francisco, CA 94105<br>415–512–4015<br>Fax: 415–512–4077<br>Email: bryan.heckenlively@mto.com<br>*ATTORNEY TO BE NOTICED* |
| | | **Helen E. White**<br>Munger Tolles & Olson LLP<br>601 Massachusetts Avenue NW<br>Suite 500E<br>Washington, DC 20001<br>202–220–1136 |

Email: helen.white@mto.com
*ATTORNEY TO BE NOTICED*

**Jennifer L. Bryant**
Munger Tolles & Olsen LLP
355 South Grand Avenue
50th Floor
Los Angeles, CA 90071−1560
213−683−9100
Fax: 213−687−3702
Email: jennifer.bryant@mto.com
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **Laura Alexander**<br>*In her Official Capacity as the Senior Associate Athletic Director for Student−Athlete Wellness and Leadership Development at San Jose State University* | represented by | **Bryan Heckenlively**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Helen E. White**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Jennifer L. Bryant**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Laura (I) Alexander**<br>*in her individual capacity* | represented by | **Bryan Heckenlively**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Todd Kress**<br>*In his Official Capacity as the Head Coach of San Jose State University Women's Volleyball Team* | represented by | **Bryan Heckenlively**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Helen E. White**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Jennifer L. Bryant**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Todd (I) Kress**<br>*in his individual capacity* | represented by | **Bryan Heckenlively**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

**Michelle McDonald Smith**
*In her Official Capacity as the Senior
Director of Media Relations at San Jose
State University*

**Defendant**

**Michelle (I) McDonald Smith**
*in her individual capacity*

represented by **Bryan Heckenlively**
(See above for address)
*ATTORNEY TO BE NOTICED*

represented by **Bryan Heckenlively**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/13/2024 | 1 | COMPLAINT against Laura Alexander, Laura (I) Alexander, Board of Trustees of the California State University, Todd Kress, Todd (I) Kress, Michelle McDonald Smith, Michelle (I) McDonald Smith, Gloria Nevarez, The Mountain West Conference (Filing fee $ 405,Receipt Number ACODC−9983812)Attorney William Bock, III added to party Jordan Sandy(pty:pla), Attorney William Bock, III added to party Katelyn Van Kirk(pty:pla), Attorney William Bock, III added to party Kiersten Van Kirk(pty:pla), Attorney William Bock, III added to party Brooke Slusser(pty:pla), Attorney William Bock, III added to party Alyssa Sugai(pty:pla), Attorney William Bock, III added to party Elle Patterson(pty:pla), Attorney William Bock, III added to party Melissa Batie−Smoose(pty:pla), Attorney William Bock, III added to party Aleah Liilii(pty:pla), Attorney William Bock, III added to party Nicanora Clarke(pty:pla), Attorney William Bock, III added to party Kaylie Ray(pty:pla), Attorney William Bock, III added to party Macey Boggs(pty:pla), Attorney William Bock, III added to party Sierra Grizzle(pty:pla), filed by Katelyn Van Kirk, Kaylie Ray, Alyssa Sugai, Brooke Slusser, Nicanora Clarke, Elle Patterson, Sierra Grizzle, Kiersten Van Kirk, Macey Boggs, Melissa Batie−Smoose, Jordan Sandy, Aleah Liilii. (Attachments: # 1 Appendix A Mountain West Handbook 2024−25, # 2 Appendix B Memorandum of Understanding for MWC Grant of Rights Agreement, # 3 Appendix C NCAA Transgender Eligibility Policies, # 4 Appendix D ICONS Letter to Boise State, # 5 Appendix E Letter from members of UNR Women's Volleyball Team, # 6 Appendix F Slusser IG Post, # 7 Appendix G 2024−10−27 Email from Kress to Batie−Smoose, # 8 Appendix H SJSU Title IX Email Exchange, # 9 Summons Mountain West Conference, # 10 Summons Gloria Nevarez, # 11 Summons Board of Trustees of the California State University, # 12 Summons Laura Alexander, # 13 Summons Todd Kress, # 14 Summons Michelle McDonald Smith, # 15 Civil Cover Sheet)(Bock, William) (Entered: 11/13/2024) |
| 11/13/2024 | 2 | NOTICE of Entry of Appearance by William Bock, III on behalf of Jordan Sandy, Katelyn Van Kirk, Kiersten Van Kirk, Brooke Slusser, Alyssa Sugai, Elle Patterson, Melissa Batie−Smoose, Aleah Liilii, Nicanora Clarke, Kaylie Ray, Macey Boggs, Sierra Grizzle (Bock, William) (Entered: 11/13/2024) |
| 11/13/2024 | 3 | NOTICE of Entry of Appearance by Justin Ross Olson on behalf of Jordan Sandy, Katelyn Van Kirk, Kiersten Van Kirk, Brooke Slusser, Alyssa Sugai, Elle Patterson, Melissa Batie−Smoose, Aleah Liilii, Nicanora Clarke, Kaylie Ray, Macey Boggs, Sierra GrizzleAttorney Justin Ross Olson added to party Jordan Sandy(pty:pla), Attorney Justin Ross Olson added to party Katelyn Van Kirk(pty:pla), Attorney Justin Ross Olson added to party Kiersten Van Kirk(pty:pla), Attorney Justin Ross Olson added to party Brooke Slusser(pty:pla), Attorney Justin Ross Olson added to party Alyssa Sugai(pty:pla), Attorney Justin Ross Olson added to party Elle |

| | | Patterson(pty:pla), Attorney Justin Ross Olson added to party Melissa Batie–Smoose(pty:pla), Attorney Justin Ross Olson added to party Aleah Liilii(pty:pla), Attorney Justin Ross Olson added to party Nicanora Clarke(pty:pla), Attorney Justin Ross Olson added to party Kaylie Ray(pty:pla), Attorney Justin Ross Olson added to party Macey Boggs(pty:pla), Attorney Justin Ross Olson added to party Sierra Grizzle(pty:pla) (Olson, Justin) (Entered: 11/13/2024) |
|---|---|---|
| 11/13/2024 | 4 | Case assigned to Judge S. Kato Crews and drawn to Magistrate Judge Maritza Dominguez Braswell. Text Only Entry. (echa, ) (Entered: 11/13/2024) |
| 11/13/2024 | 5 | Magistrate Judge consent form issued pursuant to 28 U.S.C. 636(c). (echa, ) (Entered: 11/13/2024) |
| 11/13/2024 | 6 | SUMMONS issued by Clerk. (Attachments: # 1 Summons, # 2 Summons, # 3 Summons, # 4 Summons, # 5 Summons) (echa, ) (Entered: 11/13/2024) |
| 11/14/2024 | 7 | ORDER REFERRING CASE to Magistrate Judge Maritza Dominguez Braswell for **non–dispositive matters.** Pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Fed. R. Civ. P. 72(a) and (b), this case is referred to the assigned United States Magistrate Judge to (1) convene a scheduling conference under Fed. R. Civ. P. 16(b) and enter a scheduling order meeting the requirements of D.C.COLO.LCivR 16.2, (2) conduct such status conferences and issue such orders necessary for compliance with the scheduling order, including amendments or modifications of the scheduling order upon a showing of good cause, and (3) hear and determine pretrial matters, including discovery and other non–dispositive motions. Court–sponsored alternative dispute resolution is governed by D.C.COLO.LCivR 16.6. On the request of the parties by motion, this Court may direct the parties to engage in an early neutral evaluation, a settlement conference, or another alternative dispute resolution proceeding. Alternatively, the Magistrate Judge, at their discretion, may convene such early neutral evaluation and/or settlement conferences and direct related procedures as may facilitate resolution of this case without the necessity of a motion or prior authorization of the undersigned. **Counsel for the Parties and all counsel who may later enter an appearance shall review and familiarize themselves with the undersigned's Standing Order and Practice Standards, as well as the Practice Standards of the assigned Magistrate Judge.** By Judge S. Kato Crews on 11/14/2024. Text Only Entry (skcja, ) (Entered: 11/14/2024) |
| 11/14/2024 | 8 | Unopposed MOTION for Leave to File Excess Pages *for Emergency Motion for a Preliminary Injunction* by Plaintiffs Jordan Sandy, Katelyn Van Kirk, Kiersten Van Kirk, Kaylie Ray, Macey Boggs, Sierra Grizzle. (Attachments: # 1 Proposed Order (PDF Only))(Bock, William) (Entered: 11/14/2024) |
| 11/15/2024 | 9 | ORDER GRANTING 8 Plaintiffs Kaylie Ray's, Macey Boggs', Sierra Grizzle's, Jordan Sandy's, Katelyn Van Kirk's, and Kiersten Van Kirk's Unopposed Motion for Leave to File an Emergency Motion for a Preliminary Injunction in Excess of Fifteen Pages (Motion). Plaintiffs may file their Motion not exceeding 35 pages in length, excluding the case caption, table of contents, signature block, certificate of service, certificate of conferral, and artificial intelligence certificate and accompanying exhibits.<br><br>Further, the Court understands that Plaintiffs' anticipated Motion will seek relief related to the 2024 Mountain West Conference women's volleyball tournament set to begin on 11/27/2024. In consideration of the potentially short time frame in which to attempt to address the anticipated Motion, the Court FURTHER ORDERS the |

| | | following: |
|---|---|---|
| | | 1) Plaintiffs' anticipated Motion shall be filed on or before 11/15/2024;<br>2) Any response opposing the Motion shall be filed on or before 11/19/2024;<br>3) Any response brief shall not exceed 35 pages in length, excluding the case caption, table of contents, signature block, certificate of service, certificate of conferral, and artificial intelligence certificate and accompanying exhibits; and<br>4) No reply brief is permitted without leave of Court.<br><br>The Court anticipates, if it orders a hearing on the Motion, it will set a one day, in–person hearing to occur on 11/21/2024 at 8:00am, by separate order.<br><br>SO ORDERED by Judge S. Kato Crews on 11/15/2024. Text Only Entry (Entered: 11/15/2024) |
| 11/15/2024 | 10 | MINUTE ORDER re: 9 Order on Unopposed Motion for Leave to File an Emergency Motion for a Preliminary Injunction in Excess of Fifteen Pages (Order). The Court ORDERS counsel for Plaintiffs to provide a copy of the Order to Defendants' respective counsels today.<br><br>SO ORDERED by Judge S. Kato Crews on 11/15/2024. Text Only Entry (Entered: 11/15/2024) |
| 11/15/2024 | 11 | NOTICE of Entry of Appearance *Appearance of Counsel* by Helen E. White on behalf of Board of Trustees of the California State University, Laura Alexander, Todd KressAttorney Helen E. White added to party Board of Trustees of the California State University(pty:dft), Attorney Helen E. White added to party Laura Alexander(pty:dft), Attorney Helen E. White added to party Todd Kress(pty:dft) (White, Helen) (Entered: 11/15/2024) |
| 11/15/2024 | 12 | NOTICE of Entry of Appearance *Appearance of Counsel* by Helen E. White on behalf of Board of Trustees of the California State University, Laura Alexander, Todd Kress (White, Helen) (Entered: 11/15/2024) |
| 11/15/2024 | 13 | NOTICE of Entry of Appearance *Appearance of Counsel* by Bryan Heckenlively on behalf of Board of Trustees of the California State University, Laura Alexander, Todd KressAttorney Bryan Heckenlively added to party Board of Trustees of the California State University(pty:dft), Attorney Bryan Heckenlively added to party Laura Alexander(pty:dft), Attorney Bryan Heckenlively added to party Todd Kress(pty:dft) (Heckenlively, Bryan) (Entered: 11/15/2024) |
| 11/15/2024 | 14 | Emergency MOTION for Preliminary Injunction by Plaintiffs Jordan Sandy, Katelyn Van Kirk, Kiersten Van Kirk, Brooke Slusser, Kaylie Ray, Macey Boggs, Sierra Grizzle. (Attachments: # 1 Appendix of Exhibits and Declarations)(Bock, William) (Entered: 11/15/2024) |
| 11/18/2024 | 15 | ORDER Setting Evidentiary Hearing: A one–day, in–person Evidentiary Hearing regarding Plaintiffs' 14 Emergency Motion for Preliminary Injunction is set for 11/21/2024 at 8:00 AM MST in Courtroom C201 before Judge S. Kato Crews. Witness and exhibit lists shall be filed by **11/20/2024** at 4:00 PM MST. The Parties shall stipulate to the admissibility of as many hearing exhibits as possible. No opening statements will be necessary. The parties shall confer in good faith over their planned presentations of evidence to ensure the hearing, including closing arguments, concludes in one day. |

| | | |
|---|---|---|
| | | The Court FURTHER SETS a Telephonic Status Conference for 11/20/2024 at 1:00 PM MST to review logistics for the Evidentiary Hearing. The conferrals required by this Order shall be concluded by the time of the Status Conference. To access the Status Conference, at the scheduled time, counsel shall call the Court provided conference line at: 571–353–2301, guest code 537331928.<br><br>Counsel are ORDERED to serve this Order on any counsel who has not yet entered an appearance and who represents a party (or parties) affected by Plaintiffs' Emergency Motion. Any counsel who intends to appear at the Evidentiary Hearing shall also appear at the Status Conference.SO ORDERED by Judge S. Kato Crews on 11/18/2024. Text Only Entry Modified on 11/18/2024 to correct the date for exhibit lists (skcja, ). (Entered: 11/18/2024) |
| 11/18/2024 | 16 | MOTION to Intervene by Intervenor Plaintiff Utah State University. (Attachments: # 1 Exhibit Plaintiff–Intervenor's Proposed Complaint in Intervention, # 2 Exhibit Plaintiff–Intervenor's Partial Joinder in Plaintiffs' Motion for Preliminary Injunction)(Nussbaum, Andrew) (Entered: 11/18/2024) |
| 11/18/2024 | 17 | MOTION for Leave to *File Corrected Emergency Motion for Preliminary Injunction and Corrected Appendix* 14 Emergency MOTION for Preliminary Injunction by Plaintiffs Jordan Sandy, Katelyn Van Kirk, Kiersten Van Kirk, Brooke Slusser, Kaylie Ray, Macey Boggs, Sierra Grizzle. (Attachments: # 1 Exhibit A – Corrected Emergency Motion for Preliminary Injunction, # 2 Exhibit B – REDLINE VERSION of Corrected Emergency Motion for Preliminary Injunction, # 3 Exhibit C – Corrected Movants' Appendix, # 4 Proposed Order (PDF Only))(Bock, William) (Entered: 11/18/2024) |
| 11/18/2024 | 18 | RESPONSE to 17 MOTION for Leave to *File Corrected Emergency Motion for Preliminary Injunction and Corrected Appendix* 14 Emergency MOTION for Preliminary Injunction Attorney Bryan Heckenlively added to party Laura (I) Alexander(pty:dft), Attorney Bryan Heckenlively added to party Todd (I) Kress(pty:dft), Attorney Bryan Heckenlively added to party Michelle (I) McDonald Smith(pty:dft), Attorney Bryan Heckenlively added to party Michelle McDonald Smith(pty:dft) filed by Defendants Board of Trustees of the California State University, Laura (I) Alexander, Laura Alexander, Todd (I) Kress, Todd Kress, Michelle (I) McDonald Smith, Michelle McDonald Smith. (Heckenlively, Bryan) (Entered: 11/19/2024) |
| 11/19/2024 | 19 | SUMMONS Returned Executed by All Plaintiffs. Laura Alexander served on 11/16/2024, answer due 12/9/2024; Laura (I) Alexander served on 11/16/2024, answer due 12/9/2024; Board of Trustees of the California State University served on 11/15/2024, answer due 12/6/2024; Todd Kress served on 11/16/2024, answer due 12/9/2024; Todd (I) Kress served on 11/16/2024, answer due 12/9/2024; Michelle McDonald Smith served on 11/16/2024, answer due 12/9/2024; Michelle (I) McDonald Smith served on 11/16/2024, answer due 12/9/2024; Mountain West Conference, The served on 11/14/2024, answer due 12/5/2024; Gloria Nevarez served on 11/14/2024, answer due 12/5/2024. (Attachments: # 1 Exhibit A – Service to The Mountain West Conference and Gloria Nevarez, # 2 Exhibit B – Service to Board of Trustees of the California State University, # 3 Exhibit C – Service to Alexander, Kress and Smith)(Bock, William) (Entered: 11/19/2024) |
| 11/19/2024 | 20 | ORDER GRANTING 16 Utah State University's Motion for Limited Intervention: Before the Court is proposed Intervenor 16 Utah State University's Motion for Limited |

| | | |
|---|---|---|
| | | Intervention as Plaintiff. USU seeks to intervene under Fed. R. Civ. P. 24. The Motion represents that Plaintiffs do not oppose the Motion; Defendants Mountain West Conference and Commissioner Gloria Nevarez do not oppose the Motion; and Defendants Board of Trustees of the California State University and the individual San Jose State University employees take no position on the Motion.<br><br>The Court finds USU's Motion is timely and meets the requisites for intervention as of right under Fed. R. Civ. P. 24(a). Thus, the Motion is GRANTED. It is ORDERED that the Clerk of Court add Utah State University as Intervenor–Plaintiff in this matter. It is FURTHER Ordered that USU shall file its Complaint in Intervention for Emergency Declaratory and Injunctive Relief [16–1] by close of business today.<br><br>SO ORDERED by Judge S. Kato Crews on 11/19/2024. Text Only Entry(skcja, ) (Entered: 11/19/2024) |
| 11/19/2024 | 21 | REPLY to Response to 17 MOTION for Leave to *File Corrected Emergency Motion for Preliminary Injunction and Corrected Appendix* 14 Emergency MOTION for Preliminary Injunction filed by Plaintiffs Jordan Sandy, Katelyn Van Kirk, Kiersten Van Kirk, Brooke Slusser, Kaylie Ray, Macey Boggs, Sierra Grizzle. (Bock, William) (Entered: 11/19/2024) |
| 11/19/2024 | 22 | ORDER denying Plaintiffs' 17 Motion for Leave to File Corrected Emergency Motion for Preliminary Injunction, as set forth in the attached Order.<br><br>SO ORDERED by Judge S. Kato Crews on 11/19/2024. (Entered: 11/19/2024) |
| 11/19/2024 | 23 | NOTICE re 14 Emergency MOTION for Preliminary Injunction *NOTICE OF WITHDRAWAL OF REQUEST FOR EMERGENCY INJUNCTIVE RELIEF AS TO DEFENDANT TODD KRESS ONLY* by Plaintiffs Jordan Sandy, Katelyn Van Kirk, Kiersten Van Kirk, Brooke Slusser, Kaylie Ray, Macey Boggs, Sierra Grizzle (Bock, William) (Entered: 11/19/2024) |
| 11/19/2024 | 24 | NOTICE of Entry of Appearance by Kyler Karl Burgi on behalf of Mountain West Conference, The, Gloria NevarezAttorney Kyler Karl Burgi added to party Mountain West Conference, The(pty:dft), Attorney Kyler Karl Burgi added to party Gloria Nevarez(pty:dft) (Burgi, Kyler) (Entered: 11/19/2024) |
| 11/19/2024 | 25 | NOTICE of Entry of Appearance by Chad David Williams on behalf of Mountain West Conference, The, Gloria NevarezAttorney Chad David Williams added to party Mountain West Conference, The(pty:dft), Attorney Chad David Williams added to party Gloria Nevarez(pty:dft) (Williams, Chad) (Entered: 11/19/2024) |
| 11/19/2024 | 26 | INTERVENOR COMPLAINT against *Mountain West Conference*, filed by Utah State University.(Nussbaum, Andrew) (Entered: 11/19/2024) |
| 11/19/2024 | 27 | RESPONSE to 14 Emergency MOTION for Preliminary Injunction filed by Defendants Mountain West Conference, The, Gloria Nevarez. (Attachments: # 1 Appendix Appendix – Part 1 of 3, # 2 Appendix Appendix – Part 2 of 3, # 3 Appendix Appendix – Part 3 of 3)(Williams, Chad) (Entered: 11/19/2024) |
| 11/19/2024 | 28 | RESPONSE to 14 Emergency MOTION for Preliminary Injunction filed by Defendant Todd Kress. (Attachments: # 1 Affidavit of Todd Kress, # 2 Affidavit of Bryan H. Heckenlively)(Heckenlively, Bryan) (Entered: 11/19/2024) |
| 11/20/2024 | 29 | |

| | | |
|---|---|---|
| | | MOTION for Preliminary Injunction *Partial Joinder in Plaintiffs Emergency Motion for Preliminary Injunction* by Intervenor Plaintiff Utah State University. (Nussbaum, Andrew) (Entered: 11/20/2024) |
| 11/20/2024 | 30 | MOTION in Limine *to Exclude Plaintiffs' Expert Reports and Testimony* by Defendants Mountain West Conference, The, Gloria Nevarez. (Williams, Chad) (Entered: 11/20/2024) |
| 11/20/2024 | 31 | MOTION for Leave to *for Witness to Testify Remotely* by Plaintiffs Jordan Sandy, Katelyn Van Kirk, Kiersten Van Kirk, Brooke Slusser, Kaylie Ray, Macey Boggs, Sierra Grizzle. (Attachments: # 1 Proposed Order (PDF Only))(Bock, William) (Entered: 11/20/2024) |
| 11/20/2024 | 32 | NOTICE re 31 MOTION for Leave to *for Witness to Testify Remotely of Filing Certificate of Conferral for Motion for Leave for Witness to Testify Remotely* by Plaintiffs Jordan Sandy, Katelyn Van Kirk, Kiersten Van Kirk, Brooke Slusser, Kaylie Ray, Macey Boggs, Sierra Grizzle (Bock, William) (Entered: 11/20/2024) |
| 11/20/2024 | 33 | COURTROOM MINUTES for proceedings held before Judge S. Kato Crews: Telephonic Status Conference held on 11/20/2024. The Evidentiary Hearing set for 11/21/2024 is **CONVERTED to an Oral Argument Hearing and will begin at 9:00 AM.** 30 Defendants The Mountain West Conference and Gloria Nevarez's Motion In Limine to Exclude Plaintiffs' Expert Reports and Testimony and 31 Plaintiffs' Motion for Leave for Witness to Testify Remotely are denied as moot. Court Reporter: Mary George. (Entered: 11/20/2024) |
| 11/21/2024 | 34 | Exhibit List *Plaintiffs' Witness & Exhibit List Submitted in Connection with Plaintiffs' Offers of Proof* by Plaintiffs Jordan Sandy, Katelyn Van Kirk, Kiersten Van Kirk, Brooke Slusser, Kaylie Ray, Macey Boggs, Sierra Grizzle. (Bock, William) (Entered: 11/21/2024) |
| 11/21/2024 | 35 | NOTICE of Entry of Appearance *Appearance of Counsel* by Jennifer L. Bryant on behalf of Board of Trustees of the California State University, Laura Alexander, Todd KressAttorney Jennifer L. Bryant added to party Board of Trustees of the California State University(pty:dft), Attorney Jennifer L. Bryant added to party Laura Alexander(pty:dft), Attorney Jennifer L. Bryant added to party Todd Kress(pty:dft) (Bryant, Jennifer) (Entered: 11/21/2024) |
| 11/21/2024 | 36 | COURTROOM MINUTES for proceedings held before Judge S. Kato Crews: Oral Argument Hearing held on 11/21/2024, taking under advisement 14 Emergency Motion for Preliminary Injunction and 29 Plaintiff–Intervenor's Partial Joinder in Plaintiffs' Emergency Motion for Preliminary Injunction. Court Reporter: Mary George. (cpear) (Entered: 11/21/2024) |
| 11/25/2024 | 37 | ORDER denying 29 Motion for Preliminary Injunction; denying 14 Motion for Preliminary Injunction: For the reasons shared in the attached Order, the movants have failed to meet their burden to show irreparable harm, a likelihood of success on the merits, or that the balance of harms or equities is in their favor. Therefore, the Motions are DENIED. Please see the attached Order. By Judge S. Kato Crews on 11/25/2024. (Crews, S.) (Entered: 11/25/2024) |
| 11/25/2024 | 38 | NOTICE of Entry of Appearance by Wesley R. Powell on behalf of Mountain West Conference, The, Gloria NevarezAttorney Wesley R. Powell added to party Mountain West Conference, The(pty:dft), Attorney Wesley R. Powell added to party Gloria Nevarez(pty:dft) (Powell, Wesley) (Entered: 11/25/2024) |

| 11/25/2024 | 39 | NOTICE OF APPEAL as to 37 Order on Motion for Preliminary Injunction,,, *Notice of Emergency Appeal from Order Denying Plaintiffs' Emergency Motion for Preliminary Injunction* by Plaintiffs Katelyn Van Kirk, Kiersten Van Kirk, Brooke Slusser, Kaylie Ray (Filing fee $ 605, Receipt Number ACODC–10002807) (Bock, William) (Entered: 11/25/2024) |
| --- | --- | --- |
| 11/25/2024 | 40 | ORDER SETTING INITIAL CASE DEADLINES. Proposed Scheduling Order due 1/6/2025. By Magistrate Judge Maritza Dominguez Braswell on 11/25/2024. (evaug ) (Entered: 11/25/2024) |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:24-cv-03155-SKC-MDB

BROOKE SLUSSER, *et al.*,

     Plaintiffs,

 v.

THE MOUNTAIN WEST CONFERENCE, *et al.*,

     Defendants.

---

**ORDER DENYING EMERGENCY MOTION FOR PRELIMINARY
INJUNCTION (DKT.14) & DENYING PLAINTIFF-INTERVENOR'S
PARTIAL JOINDER IN PLAINTIFFS' EMERGENCY MOTION (DKT. 29)**

---

The Moving Plaintiffs, Brooke Slusser, Kaylie Ray, Macey Boggs, Sierra
Grizzle, Jordan Sandy, Katelyn Van Kirk, and Kiersten Van Kirk, bring their
Emergency Motion for Preliminary Injunction (Dkt. 14)[1] which is now before the
Court. The Emergency Motion seeks injunctive relief under Fed. R. Civ. P. 65 against
The Mountain West Conference (MWC) and its Commissioner, Gloria Nevarez
(collectively, "MWC"), regarding the MWC's Transgender Participation Policy (TPP)

---

[1] The Court uses "Dkt. __" to refer to documents from the CM/ECF electronic docket.
Page numbers refer to the blue, ECF-header page number, as opposed to an
individual document's pagination.

1

and San Josè State University's (SJSU) rostering of an alleged transgender woman on its women's volleyball team.

Plaintiff-Intervenor University of Utah (USU)[2] joins only in the portion of the Emergency Motion that seeks injunctive relief against the MWC related to the claim that the TPP violates Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-88. The Court has jurisdiction over this matter under 28 U.S.C. §§ 1331, 1343, and 1367.

## A. PROCEDURAL HISTORY

This case has proceeded in rocket fashion since its inception mere days ago. Two weeks before the MWC Women's Volleyball Tournament ("MWC Tournament") was scheduled to begin on November 27, 2024, Plaintiffs filed their Complaint in this matter on November 13, alleging in relevant part, the MWC's violations of Title IX, the Equal Protection Clause of the Fourteenth Amendment, and the First Amendment. Two days later, on Friday, November 15, the Moving Plaintiffs filed their Emergency Motion based on an expedited briefing schedule set by the Court. Dkt. 9. The Emergency Motion seeks the following relief:

1. Rescind the portion of the MWC TPP that creates forfeits and wins and losses for a cancelled or non-played conference game where a member of the non-canceling team is a "transgender student- athlete";

---

[2] The Court will sometimes refer to the Moving Plaintiffs as "movants," and other times will refer to the Moving Plaintiffs and USU collectively as "movants."

2. Rescind the wins granted to the SJSU Team and the losses assigned via the MWC TPP to the teams which did not play the SJSU Team;

3. Order that for the purpose of calculating winning percentage to determine the six teams eligible to compete in the MWC 2024 women's volleyball tournament the six wins previously assigned to SJSU by operation of the MWC TPP and the six losses previously assigned by operation of the MWC TPP to teams which canceled women's volleyball games with SJSU cannot be relied upon to calculate the final MWC women's volleyball standings and team winning percentages (meaning that SJSU will have fewer wins and fewer games played and that the four teams that canceled games with SJSU will have fewer losses and fewer games played), and

4. Enjoin SJSU from continuing to roster student-athlete [alleged to be a trans woman] because [she] has been continuously ineligible to play women's volleyball pursuant to Title IX as [her] sex is male and is therefore ineligible to play in, and should not be permitted by the MWC to play in, the MWC women's volleyball tournament.

Dkt. 14, ECF pp.2-3.[3]

The following Monday, November 18, the Court set an evidentiary hearing on the Emergency Motion for Thursday, November 21, and set a Status Conference for the day before the hearing, on November 20. Dkt. 15. That same day (November 18), USU filed its Motion for Limited Intervention as Plaintiff (Dkt. 16), which the Court granted. Dkt. 20.

On November 19, the MWC and Defendant Kress filed their respective Responses to the Emergency Motion in compliance with the Court's expedited briefing

---

[3] Moving Plaintiff Slusser seeks only an order that her alleged trans teammate be declared ineligible to play women's volleyball or play in the upcoming MWC Tournament. Dkt. 14, ECF p.4 n.2.

schedule.[4] Dkts. 27, 28. On Wednesday, November 20, the Court held the scheduled

Status Conference. Dkt. 33. At the conference, the Court heard arguments on whether

the full briefing on the Emergency Motion suggested that predominantly legal issues

remained for the Court's consideration such that no evidentiary hearing was

necessary. The Court ultimately concluded that legal issues predominated, and

therefore, it converted the evidentiary hearing to oral argument but allowed the

parties to make evidentiary proffers during their arguments. On November 21, the

Court held oral argument on the Emergency Motion and took the matter under

advisement.

### B. FACTUAL FINDINGS[5]

The MWC Tournament is scheduled to begin in two days, on November 27.

Dkt. 14, ECF p.1. The relief sought by the Emergency Motion affects the tournament,

---

[4] During the evening of November 18, the Moving Plaintiffs filed a Motion for Leave
to File Corrected Emergency Motion for Preliminary Injunction and Corrected
Appendix to Motion, seeking leave to amend the Emergency Motion to include relief
against the Board of Trustees of the California University System. Dkt. 17. The Court
denied the motion on November 19 after receiving full briefing. Dkts. 18 (response),
21 (reply), 22 (order). The Moving Plaintiffs then withdrew their Emergency Motion
as it pertained to Defendant Kress but continued to seek the entirety of injunctive
relief against the MWC. Dkt. 23.

[5] Any citations that include citation to websites or the dockets from other related
cases are pursuant to this Court's authority to take judicial notice of such materials.
*See* Fed. R. Evid. 201; *Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1298
n.2 (10th Cir. 2014) (taking judicial notice of pleadings and other documents filed in
other jurisdictions); *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th
Cir. 2007) ("It is not uncommon for courts to take judicial notice of factual information
found on the world wide web.").

to include, at a minimum, which team members on the SJSU squad may play in it and what the team seedings will be.

The MWC is a collegiate athletic conference comprised of 14 colleges and universities—United States Air Force Academy; Boise State University; California State University, Fresno; Colorado College; Colorado State University; University of Hawai`i, Manoa; University of Nevada, Reno; University of New Mexico; San Diego State University; SJSU; University of Nevada, Las Vegas; USU; University of Wyoming; and Washington State University. Dkt. 1, ¶35; Dkt. 27-1, ECF p.3. Eleven of these institutions host women's volleyball teams for the 2024-25 academic year. Dkt. 1, ¶36. The Moving Plaintiffs play on four of those teams: SJSU, USU, Boise State, and the University of Wyoming (UW). Dkt. 1, ¶¶15, 20-25.

1.    **The MWC TPP**

In August 2022, the MWC Board of Directors adopted the TPP, which was unanimously ratified by the Athletic Directors of the applicable MWC member institutions—including USU—on August 25, 2022. Dkt. 27-1, ECF pp.204, 210. Ratification by the Athletic Directors resulted in the TPP becoming the official permanent policy of the MWC. *Id.* The MWC distributed the TPP to the MWC Joint Council, which includes three student-athlete representatives from the Mountain West Student-Athlete Advisory Committee. Dkt. 27-1, ECF p.7. The MWC also published the TPP internally as an appendix to the 2022 Mountain West Volleyball Game Management Handbook dated October 19, 2022. Dkt. 27-1, ECF pp.220, 265-

66. The MWC distributes the Volleyball Game Management Handbook internally to, among others, coaches and administrators at all MWC member institutions. Dkt.27-1, ECF pp.7-8.

> The 2022 TPP states, in relevant part:

> If a MW member institution's team refuses to compete in an intraconference contest against a fellow MW member institution's team which includes an eligible transgender student-athlete(s), the team refusing to participate shall be deemed to have forfeited the contest. The forfeiting team will be charged with a loss and the opposing team credited with a win – for the purposes of Conference records, standings, tie-breaking formulas and MW championships participation.

Dkt. 27-1, ECF pp.265-66. The MWC published the TPP internally and without change in the 2023 Mountain West Women's Volleyball Game Management Handbook. Dkt. 27-1, ECF pp.268, 308-09. And it published it again internally and without change in the 2024-25 Mountain West Volleyball Game Management Handbook. Dkt. 27-2, ECF p.2; 27-3, ECF pp.15-16.

**2.    The 2024 MWC Women's Volleyball Season**

Plaintiffs allege SJSU recruited a trans woman to join its volleyball team prior to the 2022 season.  Dkt. 1, ¶193. USU played against and defeated SJSU in the 2022 MWC finals. Dkt. 14-1, ECF pp. 436-37. SJSU's alleged trans teammate played in that game, although apparently her alleged status as a trans woman was not widely suspected or assumed at the time. *Id.*

During the 2024 season, allegations that SJSU rostered a trans woman became a talking point in the MWC early in the season because of an article published in the

6

spring of 2024 claiming a player on SJSU's team was a trans woman. Dkt. 14-1, ECF

p.437. Relatively early in the season, and before conference competition began,

players from USU heard that Southern Utah University (a non-MWC university)

withdrew from a game with SJSU because of SJSU's alleged trans teammate. *Id.* at

ECF p.438.

The Complaint alleges that in April 2024, "SJSU officials convened a meeting

with the women's volleyball players and coaches to address a recent news article

about" a player on SJSU's team alleged to be a trans woman. Dkt. 1, ¶280. Thereafter,

Moving Plaintiff Slusser informed Defendant Kress and Plaintiff Batie-Smoose (the

SJSU head coach and associate head coach, respectively) about her concerns over the

fairness and safety of playing with a trans teammate; she also told them that "other

teams within the [MWC] would not play SJSU due to [its alleged trans teammate],

and [ ] told the SJSU coaches that girls from other teams had told [her] they wanted

to protest against a man playing women's volleyball." Dkt. 1, ¶289; Dkt. 14-1, ECF

p.457.

Plaintiffs allege that Southern Utah University, a non-MWC school, withdrew

from its match against SJSU on September 14, 2024, the reason "widely reported to

be concern over playing against [SJSU's alleged trans teammate]." Dkt. 1, ¶¶316-17.

Then a domino of forfeitures by MWC teams occurred.

On September 27, Boise State announced it would not play SJSU in the match

scheduled for September 28. It issued a press release stating: "Boise State volleyball

will not play its scheduled match at San José State on Saturday, Sept. 28. Per

Mountain West Conference policy, the Conference will record the match as a forfeit

and a loss for Boise State. The Broncos will next compete on Oct. 3 against Air Force."

Dkt. 1, ¶¶339, 341, 611, 612; Dkt. 14-1, ECF pp.462-63; Dkt. 27-1, ECF pp.10-11.

The same day, in response to public inquiries concerning the TPP, the MWC

appended the TPP to the MW Handbook available on its website. Dkt. 27-1, ECF p.9.

The MWC did this without informing its member universities or their female

volleyball teams that it had taken the internal policy and made it public.

Next, on October 1, administration from the UW confirmed to the MWC that

the UW women's volleyball team would not play its match against SJSU scheduled

for October 5, in protest of SJSU's alleged trans teammate. Dkt. 27-1, ECF p.11; Dkt.

1, ¶613. The UW subsequently released a public statement: "After a lengthy

discussion, the University of Wyoming will not play its scheduled conference match

against San José State University in the UniWyo Sports Complex on Saturday, Oct.

5. Per MWC policy, the Conference will record the match as a forfeit and a loss for

Wyoming. The Cowgirls will host Fresno State on Thursday, Oct. 3 at 6:30 p.m. in

the UniWyo Sports Complex." Dkt. 27, n.17.

On October 2, USU (Plaintiff-Intervenor) followed suit and declined to play its

match against SJSU on October 23, resulting in the MWC applying the TPP and

assigning USU a loss and SJSU a win. Dkt. 1, ¶¶616-617; Dkt. 14-1, ECF pp.440-41;

Dkt. 27-1, ECF pp.11-12. USU issued the following statement about its forfeit: "Utah

8

State University will not participate in its scheduled October 23, 2024, volleyball match at San José State University. The University will abide by Mountain West Conference policy regarding how this match is recorded." Dkt. 27, n.8.

Next, the University of Nevada, Reno (UNR) was scheduled to host SJSU for a volleyball match on October 26. On October 14, the UNR informed the MWC that the UNR was releasing a statement to the media that a majority of its players told it "they were forfeiting its scheduled match with San Josè State University on Oct. 26, 2024. The players' decision and statement were made independently, and without consultation with the University or the athletic department. The players' decision also does not represent the position of the University." Dkt. 27, n.8. It further stated the UNR "intends to move forward with the match as scheduled, and the players may choose not to participate in the match on the day of the contest. No players will be subject to any team disciplinary action for their decision not to participate in the match." *Id.*; *see also* Dkt. 27-1, ECF pp.12-13. Then, on October 24, the UNR issued this statement: "Due to not having enough players to compete, the University of Nevada women's volleyball team will not play its scheduled Mountain West Conference match at San José State on Saturday, Oct. 26. Per Mountain West Conference policy, the match will be recorded as a conference loss for Nevada." Dkt. 27, n.9; Dkt. 27-1, ECF p.13.

On November 1, Boise State confirmed to the MWC that its team would forfeit its scheduled November 21 match against SJSU. Dkt. 27-1, ECF p.14. And on

9

November 8, the UW similarly confirmed to the MWC that its team would forfeit its
November 14 match against SJSU. Dkt. 27, n.10; Dkt. 27-1, ECF p.14.

The MWC applied the TPP to each of the above forfeited matches resulting in
losses for the forfeiting teams and wins for SJSU. There is no evidence any of the
forfeiting institutions protested application of the TPP to their forfeits or that they
asked or demanded the MWC treat those losses any differently, until the filing of this
lawsuit. Dkt. 27-1, ECF pp.10-14. And so far, only USU has sought to intervene in
this case.

**3.      The Related Georgia Lawsuit Against the NCAA and Others**

Meanwhile, and relevant here, on September 23, 2024, Moving Plaintiff
Slusser filed a motion in the U.S. District Court for the Northern District of Georgia,
asking to be added as a plaintiff to that ongoing lawsuit against the NCAA. Among
other claims, that lawsuit challenges the NCAA's Transgender Eligibility Policy
(TEP), including in relation to its application to SJSU's alleged trans teammate on
its women's volleyball squad. *Gaines, et al. v. NCAA, et al.*, No. 1:24-cv-01109-MHC,
ECF. No. 88 (N.D. Ga. Sept. 23, 2024); Dkt. 1, ¶320; *see also* Dkt. 88 in the N.D. Ga.
Case, ¶¶19 ("Brooke Slusser is a member of the putative class of women NCAA
student-athletes with current eligibility who are subject to the harmful effects of the
NCAA [TEP]"), 20 (alleging ". . . Slusser is an athlete dealing with known harms
arising from a male competing on a NCAA women's [volleyball] team due to the
TEP.").

## C. STANDARD OF REVIEW

Injunctive relief is an extraordinary remedy which should only be granted when the moving party clearly and unequivocally demonstrates its necessity. *See Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). Granting such "drastic relief" is the exception rather than the rule. *United States ex rel. Citizen Band Potawatomi Indian Tribe of Okla. v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d 886, 888-89 (10th Cir. 1989); *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984). In the Tenth Circuit, a party requesting injunctive relief must clearly establish the following: (1) the party will suffer irreparable injury without the injunction; (2) the threatened injury outweighs whatever damage the injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits. *Citizen Band Potawatomi Indian Tribe of Okla.*, 883 F.2d at 889.

If the injunction sought is of the "disfavored" variety, the moving party must make an especially "strong showing" that the likelihood of success and balance of harms weigh in its favor. *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019). A disfavored preliminary injunction is one that: (1) mandates (rather than prohibits) action; (2) changes the status quo; or (3) grants all the relief the moving party could expect from a successful trial. *Id.* With these injunctions, a court must "more closely [scrutinize a motion for preliminary injunction] to assure that the exigencies of the case support the granting of a remedy

11

that is extraordinary even in the normal course." *O Centro Espirita Beneficiente
Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004).

Further, Rule 65(a) does not explicitly provide that any hearing, evidentiary or
otherwise, is required before ruling on a motion for a preliminary injunction. *See
generally* Fed. R. Civ. P. 65. The Tenth Circuit requires no hearing or oral argument
on a motion for a preliminary injunction at all. *Northglenn Gunther Toody's, LLC v.
HQ8-10410-10450 Melody Lane LLC*, 702 F. App'x 702, 705 (10th Cir. 2017)
("[N]either Fed. R. Civ. P. 65(a) nor this circuit's precedent require the district court
to hold an evidentiary hearing or oral argument before deciding a motion for a
preliminary injunction."). Rather, a court may deny an injunction without a hearing
based on the written evidence (even when a hearing is requested) where "receiving
further evidence would be manifestly pointless."[6] 11A Charles Alan Wright et al.,
Federal Practice and Procedure § 2949 (3d ed. 2020). *See also Carbajal v. Warner*,
561 F. App'x 759, 764 (10th Cir. 2014) (district court within discretion to decide
whether to hold an evidentiary hearing); *Reynolds & Reynolds Co. v. Eaves*, 149 F.3d
1191, 1998 WL 339465, at *3 (10th Cir. June 10, 1998) (table) (same).

---

[6] To be sure, during oral argument and the Moving Plaintiffs' rebuttal, when arguing
the trans athlete rules applied by the NCAA and the MWC deny equal protection to
cis women and present a "clear facial violation of Title IX," counsel argued, "They're
clearly facially invalid and this Court doesn't need any evidence to see their
invalidity. It's all before you."

# D. ANALYSIS

## 1.    Nature of the Injunction Sought

The Court first considers the nature of the injunction sought because that determines the weight of the burden Moving Plaintiffs and USU must satisfy regarding the likelihood of success and balance of harms. Because the purpose of temporary injunctive relief is to preserve the status quo pending a trial on the merits, courts determining the status quo "are directed to look at the last peaceable uncontested status existing between the parties before the dispute developed." *Archer v. Griswold*, 638 F. Supp. 3d 1246, 1255 (D. Colo. 2022) (citing *Schrier*, 427 F.3d at 1260). Here, movants seek an order requiring the MWC to do four things: (1) rescind the TPP; (2) flip the wins granted SJSU and the losses accorded forfeiting teams; (3) recalculate the teams' standings; and (4) enjoin SJSU from continuing to roster its alleged trans teammate and prohibit her from playing in the upcoming tournament. Dkt. 14 at ECF pp.5-6.

Considering the nature of this relief, the Court finds it alters the status quo because SJSU's alleged trans teammate has been on its roster since 2022 and throughout the 2024 season, and because the TPP has been in effect (whether or not posted publicly) since August of 2022. Until the filing of this lawsuit, there was no dispute between the parties over the applicability or enforceability of the TPP. The evidence before the Court is that the MWC member institutions, including Plaintiff-Intervenor USU, approved and ratified the TPP in 2022. Concerning SJSU's alleged

13

trans teammate, she has been a member of the team since the 2022 season and has played on the team each season since. Dkt. 1 at ¶¶193, 207. It was not until the spring of 2024, at the earliest, that questions arose from Plaintiffs regarding her gender identity.

The last peaceable uncontested status between the parties, therefore, was one in which the TPP existed ratified and unchallenged by the MWC member institutions since August 2022, and SJSU's alleged trans teammate was rostered and playing since the 2022 season. In now seeking to rescind the TPP, rescind its application to the earlier forfeits, recalculate team standings, and de-roster SJSU's team member, the proposed injunction would disrupt (rather than preserve) the status quo. Moving Plaintiffs and USU must therefore make a "strong showing" that the likelihood of success and balance of harms weigh in their favor. *See Free the Nipple-Fort Collins*, 916 F.3d at 797.

This is in addition to the mandatory nature of the injunction sought. The proposed injunction requires affirmative deeds, *to wit*: rescinding policy, flipping wins and losses, and removing a player. *Trial Laws. Coll. v. Gerry Spence Trial Laws. Coll. Thunderhead Ranch*, 23 F.4th 1262, 1275 (10th Cir. 2022) ("Other injunctions are considered 'mandatory' when they 'affirmatively require' action."). Thus, the movants seek a mandatory injunction. *Id.* ("In ordering removal of the sculptures, the district court imposed a mandatory injunction by affirmatively ordering the Spence Group to take action."). The burden on a party seeking a mandatory injunction is also higher;

14

the movant must assure that the "exigencies of the case" support mandatory action.
*Id.*

## 2.    Whether Movants Met Their Burden to Show Irreparable Harm

"[A] showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction[.]" *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (quoting *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990)). "Irreparable harm, as the name suggests, is harm that cannot be undone, such as by an award of compensatory damages or otherwise." *Salt Lake Tribune Pub. Co., LLC v. AT & T Corp.*, 320 F.3d 1081, 1105 (10th Cir. 2003). "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Schrier*, 427 F.3d at 1267 (quoting *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003)). "The party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Id.* (quoting *Heideman*, 348 F.3d at 1189 (alteration adopted)).

The Tenth Circuit acknowledges that "delay in seeking [injunctive] relief cuts against finding irreparable injury." *Kan. Health Care Ass'n, Inc. v. Kan. Dep't of Soc. & Rehab. Servs.*, 31 F.3d 1536, 1543–44 (10th Cir. 1994) (cleaned up). And that's a problem for the movants here. The Court finds their delay in filing this action and seeking emergency relief related to the MWC Tournament weakens their arguments regarding irreparable harm. *GTE Corp.*, 731 F.2d at 679 (denying preliminary

15

injunction and noting "movant's delay in bringing suit is an important factor in determining irreparable harm."); *Deer Valley Resort Co. v. Christy Sports, LLC*, No. 2:07-CV-00904-DAK, 2007 WL 4570664, at *4 (D. Utah Dec. 21, 2007) (one-year delay weighs against a finding of irreparable harm); *see also Krueger Int'l, Inc. v. Nightingale Inc.*, 915 F. Supp. 595, 613 (S.D.N.Y. 1996) ("I decline to manufacture a sense of urgency that is not supported by plaintiff's own conduct.").

The Court understands "there is no categorical rule that delay bars the issuance of an injunction[.]" *Fish v. Kobach*, 840 F.3d 710, 753 (10th Cir. 2016). But here, when considering the movants' challenge to the TPP, this policy was approved and ratified by the MWC's member institutions, *including* Plaintiff-Intervenor USU, in August 2022. And any threatened harm resulting from the MWC's enforcement of that policy is apparent on the policy's face—when a team refuses to compete against another team that rosters an eligible trans teammate, the refusal is deemed a forfeit and the "forfeiting team *will be charged with a loss and the opposing team credited with a win – for the purposes of Conference records, standings, tie-breaking formulas and MW championships participation*." Dkt. 27-1, ECF pp.265-66 (emphasis added).

It makes little difference that the MWC did not publish the TPP publicly until September 2024, or that the Moving Plaintiffs (mostly student athletes) may have been unaware of the TPP until that time. The MWC's eventual public posting of the TPP did not render its 2022 internal enactment and application to its member institutions any less valid. And the member institutions who forfeited their matches

against SJSU in 2024 acquiesced in the enforcement of the policy against them as evidenced by the public statements they issued, which acknowledged their acceptance and understanding of how the resulting wins and losses would be accorded. Dkt. 1, ¶¶339, 341, 611; Dkt. 27, n.8, 9, 17.

But even when giving the Moving Plaintiffs the benefit of the doubt, the MWC publicly posted the TPP in September of 2024. The string of forfeits that followed with forfeiting institutions publicly acknowledging application of the TPP began on or about September 28 (Boise State). Forfeits then occurred again on or about October 1 (UW); October 2 (USU); October 24 (UNR); November 1 (Boise State); and November 8 (UW). And yet, Plaintiffs did not file this lawsuit or their Emergency Motion until two weeks before the start of the MWC Tournament set to begin on November 27.

Having only two weeks to address consequential injunctive relief certainly begets an emergency. But the facts associated with enactment of the TPP in 2022, and its application to member institutions during the 2024 season, suggest the movants could have sought injunctive relief much earlier if the exigencies of the circumstances required mandatory court intervention.

For these reasons, the Court finds the movants' delay was not reasonable, there is no evidence to suggest they were precluded from seeking emergency relief earlier, and the rush to litigate these complex issues now over a mandatory injunction places a heavy lift on the MWC at the eleventh hour. *Fish*, 840 F.3d at 753 (the

17

question "is whether the delay was reasonable, was not a decision by the party to 'sit on its rights,' and did not prejudice the opposing party."). *See also Colorado Motor Carriers Ass'n v. Town of Vail*, No. 1:23-cv-02752-CNS-STV, 2023 WL 8702074, at *12 (D. Colo. Dec. 15, 2023) ("Courts in both this jurisdiction and others have uniformly determined that a movant's delay in seeking injunctive relief warranted the relief's denial.") (collecting cases); *Archer*, 638 F. Supp. 3d at 1261-62 (finding plaintiffs failed to show irreparable harm on their First Amendment claim due to their delay in seeking injunctive relief).

The same is true of the delay associated with the requested relief to enjoin SJSU from rostering its alleged trans teammate. At the earliest, Moving Plaintiffs or their institutions began to learn that one of SJSU's teammates was an alleged trans woman with an article published in the spring of 2024. And they certainly had knowledge of this alleged player when the string of member institutions started forfeiting matches against SJSU in September 2024.

Even further though, the essence of the concept of irreparable harm "requires a substantial *threat of harm* to the movant that cannot be compensated by money." *Mountain Med. Equip., Inc. v. Healthdyne, Inc.*, 582 F. Supp. 846, 848 (D. Colo. 1984) (citing *Spiegel v. City of Houston*, 636 F.2d 997 (5th Cir. 1981)) (emphasis added). "A threat, by definition, only encompasses action about to occur." *Id.* A preliminary injunction, therefore, is typically no recourse for harm that has already happened. *Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 421 (D. Colo.

2003) ("[T]he moving party must come forward with evidence showing irreparable injury may occur *pendente lite* if the preliminary injunction is not granted."); *see also Pham v. Univ. of La. at Monroe*, 194 F. Supp. 3d 534, 548 (W.D. La. 2016), *aff'd sub nom. Dung Quoc Pham v. Blaylock*, 712 F. App'x 360 (5th Cir. 2017) (where student was already expelled, there was "no threat of irreparable injury or reason to preserve the status quo because the status quo is not what is desired.").

In this instance, most (if not all) of the alleged harm has already occurred. SJSU's alleged trans teammate has played on the team since 2022. Each time an opposing squad forfeited a game in 2024 and the MWC enforced the TPP, the forfeit was recorded as a loss against that team's record and simultaneously affected the overall team standings going forward. Because a crux of the Moving Plaintiffs' complaint regarding the TPP is that it counted each forfeit as a loss, each loss was a harm that could have been addressed with an earlier request for injunctive relief because the threat of harm—a forfeit treated as a loss—was apparent from the face of the TPP. At this stage, however, there is no longer a threat of harm because the alleged harm already occurred when each team incurred the loss on its record.

Moreover, as of the date of this Order, the volleyball season has ended and the bracket and seedings for the MWC Tournament are finalized.[7] As related to the

---

[7] On November 23, the MWC posted the seedings for the tournament on its website as follows: No. 1: Colorado State University; No. 2: SJSU; No.3 USU; No.4: Fresno State; No. 5: Sand Diego State; and No. 6: Boise State.

tournament, teams were required to provide their travel party information to the MWC by November 20; they were requested to confirm their intent to participate in the tournament by November 22; and the bracket and seedings for the tournament were determined and announced on November 23 following the final regular season matches. Dkt. 27-1, ECF pp.14-15.[8] Thus, the harms the Emergency Motion seeks to avert regarding the TPP have already occurred. This further weighs against finding irreparable harm to support a preliminary injunction.

For these reasons, the movants have failed to meet their burden to show irreparable harm, thus justifying denial of the Emergency Motion and USU's motion partially joining in it.

**3. Whether Movants Met Their Heightened Burden of Showing a Likelihood of Success on Their Title IX, Equal Protection, and First Amendment Claims[9]**

**a. Title IX and Equal Protection Claims**

No Defendant disputed that SJSU rosters a trans woman volleyball player. *See, e.g.,* Dkt. 14-1 (Expert Witness Declaration of Tommy Lundberg, PhD), ECF

---

[8] On November 24, 2024, the head coaches of the qualifying volleyball teams were required to participate in a Pre-Championship meeting; on November 26, 2024, the student-athlete roster form is due to the MWC for each qualifying team. Dkt. 27-1, ECF pp.14-15.

[9] The discussion in this section assumes, without deciding, that the movants met their burden to show a reasonable likelihood of success on the merits in establishing the MWC is a federal funds recipient for purposes of Title IX and a state actor for purposes of the Equal Protection Clause and First Amendment claims.

20

p.361 ¶¶2.3 (defining "transgender" "as an umbrella term to describe individuals whose gender identity differs from the sex observed at birth. Trans-identifying males (often referred to as transgender girls/women) are individuals who were observed male at birth but identify as girls/female/women."). Thus, a legal issue before the Court on the Emergency Motion is whether the meaning of "sex" under Title IX and the Equal Protection Clause includes trans individuals. *See A.C. by M.C. v. Metro. Sch. Dist. of Martinsville*, 75 F.4th 760, 769 (7th Cir. 2023), *cert. denied sub nom. Metro. Sch. Dist. of Martinsville v. A. C.*, 144 S. Ct. 683 (2024) ("The crucial question for the Title IX theory . . . is one of law: how does one interpret Title IX's prohibition against discrimination 'on the basis of sex' as applied to transgender people? . . . Our answer to that legal question [does] not depend on the plaintiff's evidentiary showing, and that answer does not change with a more rigorous threshold for success on the merits."). Considering Tenth Circuit and Supreme Court precedent on this issue suggests the movants have failed to show a likelihood of success on the merits of these claims.

In the Tenth Circuit, "[c]ourts have generally assessed Title IX discrimination claims under the same legal analysis as Title VII claims." *Gossett v. Okla. ex rel. Bd. of Regents for Langston Univ.*, 245 F.3d 1172, 1176 (10th Cir. 2001); *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1250–51 (10th Cir. 2021); *see also Dimas v. Pecos Indep. Sch. Dist. Bd. of Educ.*, No. 1:21-cv-00978-KWR-JFR, 2022 WL 816501, at *4 (D.N.M. Mar. 17, 2022) (doing so and concluding "this Court may reasonably conclude that a

plaintiff's allegation of discrimination due to sexual orientation falls within Title IX's broader prohibition against discrimination on the basis of sex."); *but see Bridge on behalf of Bridge v. Okla. State Dep't of Educ.*, 711 F. Supp. 3d 1289, 1298 (W.D. Okla. 2024) (declining to do so); *Kansas v. U.S. Dep't of Educ.*, --- F. Supp. 3d ---, No. 24-4041-JWB, 2024 WL 3273285, at *9-10 (D. Kan. July 2, 2024) *appeal docketed* No. 24-3097 (July 11, 2024) (declining to do so). Indeed, the Tenth Circuit instructs that Title IX is best interpreted by looking to Title VII. *See Roberts v. Colo. State Bd. of Agric.*, 998 F.2d 824, 832–33 (10th Cir. 1993) ("Further, despite the fact that Title IX was explicitly modeled on Title VI, this court has held that Title VII of the Civil Rights Act of 1964 . . . is 'the most appropriate analogue when defining Title IX's substantive standards, including the question of whether "disparate impact" is sufficient to establish discrimination under Title IX.'" (quoting *Mabry v. State Bd. of Cmty. Coll. & Occupational Educ.*, 813 F.2d 311, 316 n. 6 (10th Cir. 1987), *cert. denied*.) This includes consideration of the ordinary public meaning of the statute's language at the time it was enacted. *Bostock v. Clayton Cnty., Ga.*, 590 U.S. 644, 659 (2020).

In *Bostock*, the Supreme Court interpreted the meaning of "sex" as used in Title VII of the Civil Rights Act of 1964.[10] *Id.* at 655. The high court first "proceed[ed] on the assumption" that "sex" referred "only to biological distinctions between male and female[,]" which it described as "just a starting point." *Id.* at 655-56. According

---

[10] Title IX of the Education Amendments was enacted eight years later, in 1972.

to the Supreme Court, the question wasn't "just what 'sex' meant, but what Title VII says about it." *Id.* at 656. Noting that Title VII prohibits employers from taking certain action "because of" sex, it held "it is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex." *Id.* at 656, 660. *See also id.* at 669 ("By discriminating against transgender persons, the employer unavoidably discriminates against persons with one sex identified at birth and another today.").

Since *Bostock*, many circuit courts have followed this precedent to find or assume that "sex" under Title IX's prohibitions includes discrimination based on an individual's trans status or sexual orientation. *See, e.g., Dimas*, 2024 WL 1881076, at *8 n.9 (citing *Bostock* and assuming for purposes of the appeal that under Title IX, discrimination on the basis of sexual orientation is sex-based discrimination);[11] *B.P.J. by Jackson v. W. Va. State Bd. Of Educ.*, 98 F.4th 542, 563 (4th Cir. 2024), *cert. denied WV Secondary School Activities v. B.P.J.*, --- S. Ct. ---, 2024 WL 4805904 (excluding middle school trans girl from playing on girls' cross country and track-and-field teams violated Title IX); *A.C. by M.C.*, 75 F.4th at 769 ("Applying *Bostock*'s reasoning to Title IX, we have no trouble concluding that discrimination against transgender

---

[11] In the Tenth Circuit, courts may rely on unpublished Tenth Circuit opinions when they have persuasive value with respect to a material issue and will assist the court in its disposition. *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005).

persons is sex discrimination for Title IX purposes, just as it is for Title VII purposes."), *cert. denied*, 144 S. Ct. 683 (2024).

These interpretations are further consistent with the Supreme Court's earlier interpretation of "on the basis of sex" under Title IX. *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (2005). In *Jackson*, the Supreme Court noted the text of Title IX "broadly prohibits a funding recipient from subjecting any person to 'discrimination' 'on the basis of sex[,]'" and it held Title IX protects a person (there a male) from retaliation for complaining about sex discrimination experienced by others. *Id.* at 173-74 ("We conclude that when a funding recipient retaliates against a person *because* he complains of sex discrimination, this constitutes intentional 'discrimination' 'on the basis of sex,' in violation of Title IX." (emphasis in original)). The *Jackson* Court observed that "discrimination" "is a term that covers a wide range of intentional unequal treatment; by using such a broad term, Congress gave [Title IX] a broad reach." *Id.* at 175.

The holding in *Bostock* brings the reasoning in *Jackson* full circle when considering the meaning of "sex" in Title IX as applied to trans individuals. This full circle is further consistent with the Tenth Circuit's recent interpretation of the meaning of "sex" under the Equal Protection Clause, where it applied the reasoning in *Bostock* to hold that discrimination based on trans status is discrimination on the basis of sex that implicates the Equal Protection Clause. *Fowler v. Stitt*, 104 F.4th 770, 790 (10th Cir. 2024) ("But we see nothing about these differences that would

24

prevent *Bostock*'s commonsense reasoning—based on the inextricable relationship between transgender status and sex—from applying to the initial inquiry of whether there has been discrimination on the basis of sex in the equal protection context.").

Moreover, the movants' Title IX theory raised in this case directly conflicts with Title IX's prohibition on discrimination against trans individuals. Courts are required to interpret a statute "as a symmetrical and coherent regulatory scheme" and "fit, if possible, all parts into a harmonious whole[.]" *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (cleaned up). And "as between multiple reasonable interpretations of a statute, we will always prefer one that sustains constitutionality to one that does not under the presumption of constitutional validity." *United States v. Brune*, 767 F.3d 1009, 1023 (10th Cir. 2014).

This is all to say that based on this body of Tenth Circuit and Supreme Court precedent, and on the current record, Moving Plaintiffs and USU have failed to meet their burden to establish a likelihood of success on the merits of their Title IX and Equal Protection claims.

### b.    First Amendment Claims

The Court also finds the movants have failed to show a likelihood of success on their First Amendment claim involving the TPP. The Court agrees with the Moving Plaintiffs that the First Amendment generally protects their right to protest. *See Nat'l Ass'n for Advancement of Colored People v. Alabama ex rel. Flowers*, 377 U.S. 288, 307 (1964). As pleaded and alleged, this claim is persuasive insofar as the

25

allegations of the MWC's surreptitious posting of the TPP in September 2024 as a reaction to teams forfeiting games against SJSU because of its alleged trans teammate.[12] Dkt. 1, ¶¶346-56. But the claim loses persuasive value based on the unrefuted evidence (conceded by USU) that the TPP was ratified and enacted by the MWC member institutions in 2022, it became official and binding policy at that time, and the policy did not change between 2022 and 2024. It is also notable that the MWC member institutions who forfeited their matches against SJSU during the 2024 season acknowledged their understanding of the application of the TPP to their forfeits, without protest. As the Court understands it, the only member institution to protest so far is USU, but its protest did not come until it sought to intervene in this action.

The point here is that, because of these facts, Moving Plaintiffs have failed to meet their burden to show a likelihood of success on their First Amendment Claim involving the TPP.

---

[12] At the hearing, Moving Plaintiffs argued the MWC admitted a violation of its bylaws because Section 2.15 of the bylaws provide the MW Handbook "may be amended only by the affirmative vote of three-fourths (3/4) of the members of the Board of Directors." Dkt. 14-1, ECF p.122. Counsel for the MWC indicated at the hearing, in response to the Court's query, that it was a staff decision to make the TPP publicly available by appending it to, and posting it in, the MW Handbook available online. It is not apparent on the record whether appending one document to another is equivalent to amending a document. But regardless, the MWC's eventual public posting of the TPP (even if done in derogation of the bylaws) did not render the TPP's 2022 internal enactment and application to its member institutions any less valid.

4.    **Balance of Harms**

Even if the Court later finds in Plaintiffs' favor on the claims which are the subject of the Emergency Motion, for the reasons shared above concerning the irreparable-harm factor, the threatened injury to the movants if an injunction issues is outweighed by the MWC's interest in holding the upcoming MWC Tournament without an eleventh-hour shake-up to its currently planned structure. The tournament is set to begin in mere days, on November 27, and it has been scheduled to occur for ten months. Dkt. 27-1 at ECF pp.14-15. According to the evidence, the bracket and seeding for the tournament are already determined and the head coaches of the selected teams have participated in the Pre-Championship meeting. *Id.* The relief requested with the Emergency Motion would risk confusion and upend months of planning and would prejudice, at a minimum, Defendants and other teams participating in the tournament depending on the results of any reseeding. On balance, the equities favor the MWC's interest in conducting and proceeding with the tournament as planned.

*      *      *

For the reasons shared above, the movants have failed to meet their burden to show irreparable harm, a likelihood of success on the merits, or that the balance of harms or equities is in their favor. *First W. Capital Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1144 (10th Cir. 2017) ("We need not address each of the four preliminary injunction factors here because the district court has already determined [plaintiff]

27

cannot show irreparable harm. . . . . Without showing irreparable harm, [plaintiff] cannot obtain a preliminary injunction."); *see also Roberts v. Generation Next, LLC*, No. 18-cv-00975-WJ-LF, 2019 WL 2340960, at *1 (D.N.M. June 3, 3019) ("The elements [for preliminary injunction] are set forth in the conjunctive—meaning that a plaintiff must satisfy *all* four elements in order to obtain injunctive relief."). As a result, the Court must deny the Emergency Motion (Dkt. 14) and Plaintiff-Intervenor's Partial Joinder in it (Dkt. 29).

It is ORDERED that the motions at Dkts. 14 and 29 are DENIED. It is FURTHER ORDERED that the parties shall contact the chambers of Magistrate Judge Maritza Dominguez Braswell to set a Rule 16(b) Scheduling Conference.

Dated: November 25, 2024.

BY THE COURT:

S. Kato Crews
United States District Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-03155-SKC-MDB

BROOKE SLUSSER, *et al.*,

      Plaintiffs,

v.

THE MOUNTAIN WEST CONFERENCE, *et al.*,

      Defendants.

---

## NOTICE OF EMERGENCY APPEAL FROM ORDER DENYING PLAINTIFFS' EMERGENCY MOTION FOR PRELIMINARY INJUNCTION

---

Plaintiffs Brooke Slusser, Kaylie Ray, Katelyn Van Kirk and Kiersten Van Kirk (collectively the "Plaintiffs") appeal to the United States Court of Appeals for the Tenth Circuit from the Order Denying Plaintiffs' Emergency Motion for Preliminary Injunction entered on November 25, 2024.

DATED: November 25, 2024.

                    */s/ William Bock III*
                    William Bock III, CO Atty. No. 45633
                    Kroger Gardis & Regas, LLP
                    111 Monument Circle, Suite 900
                    Indianapolis, IN 46204
                    Tel: (317) 692-9000
                    Fax: (317) 264-6832
                    E-mail:   wbock@kgrlaw.com

                    ATTORNEYS FOR PLAINTIFFS